ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6511
    Fax: (415) 436-7027
    George.Hageman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DILLON SEMBRANO, <br><br> Defendant. | CASE NO. 3:22-CR-00296-003 <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Court:           Hon. Charles R. Breyer <br> Hearing Date:   June 8, 2023 <br> Hearing Time:   10:00 A.M. |

**I.     INTRODUCTION**

In January 2021, defendant John Dillon Sembrano pleaded guilty to one count of being a felon in possession of a firearm. *See* 3:19-cr-00651, Dkt. 80. His sentencing was deferred and he remained out of custody. *Less than ten months later* in November 2021, while on release and awaiting sentencing for the first conviction, the defendant was arrested *again* for an even more serious set of firearms charges: dealing firearms without a license and again being a felon in possession of a firearm. *See* 3:22-cr-00296-003, Dkt. 1. Based on the nature and circumstances of the offense and the defendant's criminal history, the government submits that a significant custodial sentence of 36 months imprisonment is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

UNITED STATES' SENTENCING MEMORANDUM    1
3:22-CR-00296-003

## II. PROCEDURAL HISTORY

On December 5, 2019, the defendant was charged by Indictment with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). *See* 3:19-cr-00651, Dkt. 1. He pleaded guilty to that sole count on January 27, 2021, pursuant to a plea agreement. *See id.* at Dkt. 81. The Court initially set sentencing for May 19, 2021, but then deferred it multiple times over the next 18 months. *See id.* at Dkt. 85, 93, 96. The defendant remained out of custody while awaiting sentencing.

On August 9, 2022, while still awaiting sentencing, the defendant was charged by a *new* Indictment with dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). *See* 3:22-cr-00296-003, Dkt. 1. He pleaded guilty to both counts on March 22, 2023, pursuant to a plea agreement. *See id.* at Dkt. 68. That plea agreement expressed the parties' intent that the defendant's next sentencing hearing take both the 3:19-cr-00651 and 3:22-cr-00296-003 cases into account. *See id.* at Dkt. 68 ¶ 17. Indeed, the offense level calculation in the plea agreement as well as Probation's Presentence Report (PSR) take both cases into account in coming to their respective recommendations. *See id.* at Dkt. 68 ¶ 7; Dkt. 73.

## III. OFFENSE CONDUCT

On or about April 9, 2019, San Francisco Police Department (SFPD) officers executed a search warrant at the defendant's home in response to a shooting that occurred a few weeks prior; the shooter was seen on camera firing shots near a Walgreens parking lot and then running back to the defendant's home. *See* PSR at 8. During the search, police found—in the defendant's bedroom dresser—a stolen Kimber brand 9mm pistol and seven rounds of RP 9mm Luger ammunition. *See id.* The defendant admitted to police that the firearm was his, but he denied being involved in the shooting. *See id.*

Meanwhile, starting in mid-2019, SFPD began tracking firearms advertised for sale on Snapchat and Instagram accounts belonging to Ryan Chantha. *See id.* at 9. Subsequent investigation revealed that the defendant, while still on release pending sentencing for his recent federal conviction, was involved in the acquisition and sale of dozens of these firearms starting from on or about August 2020. *See* 3:22-cr-00296-003, Dkt. 68 ¶ 2. Despite being a prohibited person (twice over), the defendant would purchase or otherwise acquire these firearms and re-sell them either on his own or through Chantha's advertisements on social media. *See id.* He also worked with a third individual, Kelly Mean, regarding the acquisition

and sale of these firearms. *See id.* The defendant did not have a license to deal firearms, nor did the other two individuals. *See id.*

On November 16, 2021, SFPD searched the defendant's vehicle and bedroom (again) and found a total of *seventeen* firearms: (1) one Glock brand, model 23, .40 S&W caliber pistol, bearing serial number AFTR674, (2) one Glock brand, model 27, .40 S&W caliber pistol, bearing serial number BSBV580, (3) one Glock brand, model 32, .357 SIG caliber pistol, bearing serial number CEA810US, (4) one Glock brand, model 40, 10 mm caliber pistol, bearing serial number BGKX247, (5) one Glock brand, model 41, .45 ACP caliber pistol, bearing serial number XLV306, (6) one Glock brand, model 43, 9 mm caliber pistol, bearing serial number BNEP343, (7) one Kimber brand, model Super Carry Custom, .45 ACP caliber pistol, bearing serial number K411291, (8) one Sig Sauer brand, model 1911, .45 ACP caliber pistol, bearing serial number 54A04225, (9) one Sig Sauer brand, model P229, .357 SIG caliber pistol, bearing serial number 558006378, (10) one Sig Sauer brand, model P365, 9 mm caliber pistol, bearing serial number NRA038675, (11) one Sig Sauer brand, model P365, 9 mm caliber pistol, bearing serial number 66A478701, (12) one Sig Sauer brand, model P365, 9 mm caliber pistol, bearing serial number 66B628156, (13) one Smith & Wesson, model M&P, .380 ACP caliber pistol, bearing serial number NFV5297, (14) one Springfield Armory brand, model XD10, 10 mm caliber pistol, bearing serial number HM509167, (15) one Springfield Armory brand, model XD45, .45 ACP caliber pistol, bearing serial number XS520450, (16) one Springfield Armory brand, model XD45, .45 ACP caliber pistol, bearing serial number MG670521, and (17) one Taurus International Manufacturing brand, model Taurus 1911, .45 ACP caliber pistol, bearing serial number NKW23686. *See id.*

The defendant possessed all seventeen of those firearms in connection with his unlicensed firearms dealing business. *See id.* Four of the firearms were stolen. *See id.* He knew at the time that he was prohibited from possessing any firearm, let alone seventeen of them. *See* PSR at 11.

**IV.    SENTENCING GUIDELINES CALCULATION**

The government agrees with Probation's calculation of the offense level. *See* PSR at 13. The defendant's offenses from the two indictments group together. *See* PSR at 12; U.S.S.G. § 3D1.1 app. n. 1; *see also United States v. Castillo*, __ F.4th __, 2023 U.S. App. LEXIS 13373 at *1 (9th Cir. May 31, 2023) (discussing role of U.S.S.G. application notes). The base offense level is 14 because the defendant

was a prohibited person at the time he committed the instant offense. *See* PSR at 12-13 (citing U.S.S.G. § 2K2.1(a)(6)). Four points are added because he possessed a total of eighteen firearms: one from the first case, seventeen from the second case. *See id.* (citing U.S.S.G. § 2K2.1(b)(1)(B)). Two points are added because five of the firearms were stolen: one from the first case, four from the second case. *See id.* (citing U.S.S.G. § 2K2.1(b)(4)(A)). Four points are added because the defendant engaged in the trafficking of firearms. *See id.* (citing U.S.S.G. § 2K2.1(b)(5)). Lastly, three points are subtracted for acceptance of responsibility. *See id.* (citing U.S.S.G. § 3E1.1). Together, the total offense level for the single group is 21. *See id.*

The government also agrees that the defendant is in Criminal History Category III, which yields an advisory guidelines range of 46 to 57 months. *See* PSR at 23.

## V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

UNITED STATES' SENTENCING MEMORANDUM   4
3:22-CR-00296-003

## VI. RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 36 months imprisonment.

On the one hand, the nature and circumstances of the offenses are serious. The defendant willfully and knowingly proliferated the tools of violence in an inherently dangerous manner. He was not a licensed firearms dealer and he did not follow any of the limited safeguards in place to ensure that those firearms are possessed only by law-abiding citizens. Those firearms, some of which were stolen, were sold and re-sold in an untraceable way that naturally lends itself to illicit use. Indeed, the defendant knew this better than most because of his proximity to the shooting in the Walgreens parking lot that precipitated the first search of his house (and first conviction for being a felon in possession of a firearm). Moreover, he kept these eighteen firearms, loaded and unlocked, in a house with children. *See* PSR at 10. Thankfully, no child was harmed.

The history and characteristics of the defendant are also concerning. In discussing his first conviction, the defendant stated that he was "extremely sorry and ashamed of [his] possession of a firearm," that he "would never engage in or condone that kind of behavior [referring to the shooting]," and that he fully knew and understood that "[his] possession alone was illegal even sitting in my dresser drawer." *See* PSR at 11-12. Despite this alleged remorse, the defendant was caught less than ten months later engaged in even more firearms-related criminal activity. This time, the firearms were doing more than just sitting in his dresser drawer. They were part of his illegal firearms dealing business where he would acquire and inject these firearms back into the black market. He got a rare second chance to prove himself worthy of leniency, and he blew it.

The need for the sentence to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and the protect the public from future crimes all weigh in favor of a significant custodial sentence. The defendant was clearly undeterred by the temporary lack of a custodial sentence after his first conviction. He continued to engage in the same firearms-related criminal activity, and indeed became involved in even worse conduct by becoming not only a possessor but also a dealer. Recidivism is unfortunately not uncommon with criminal defendants, but to recidivate before the previous case has even ended is particularly galling. Whereas the previous possession of a single firearm could

plausibly have been for self-defense (though still illegal), there is no such possibility here: the defendant knew exactly what he was doing when he stored seventeen firearms in his house and vehicle. This is also not a situation where an addict cannot help himself; this is willful involvement in a business enterprise that he knew was illegal. Without a ratcheting up of punishment, the defendant will not change his behavior or respect the law.

On the other hand, the defendant should get credit for early acceptance of responsibility on both occasions. There is no evidence that he himself directly encouraged any violent activity with his products, and he has no violent criminal history himself. Though he certainly failed to consider the downstream consequences of his actions, for himself and for society, his motives appear to be more financial than violent. His prior convictions resulting in Criminal History Category III are older and are primarily marijuana offenses (with one concealed weapons conviction). *See* PSR at 14-16. He was in his late twenties when he committed both sets of crimes. He will hopefully soon be entering a phase of life where guns are not as "cool" as they once were, and where he recognizes the tragic life-shattering effects that his conduct potentially enabled.

A custodial sentence of 36 months imprisonment, below the advisory guidelines range, takes all of the above aggravating and mitigating factors into account. It is substantially longer than any previous sentence he has received, *see id.*, and double what the government previously recommended in the first case before sentencing was deferred. *See* 3:19-cr-00651, Dkt. 83. The government believes 36 months is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

**VII. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court impose a custodial sentence of 36 months imprisonment.

DATED: June 1, 2023                           Respectfully submitted,

                                                  ISMAIL J. RAMSEY
                                                  United States Attorney

                                                  */s/ George O. Hageman*
                                                  GEORGE O. HAGEMAN
                                                  Assistant United States Attorney